H. ELIZABETH B. CHAPMAN *vs.* INDUSTRIAL TRUST CO., EX'r.

JUNE 15, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) *Probate Law. Services Rendered Deceased.*

In an action by a member of testatrix's household (a daughter-in-law) to recover for nursing and attendance, rendered testatrix:

*Held,* that the jury were justified in finding on the evidence that there was a reasonable and proper expectation on the part of both plaintiff and testatrix that plaintiff would be compensated.

(2) *Probate Law. Value of Services Rendered Deceased.*

In an action to recover for nursing and attendance rendered testatrix, on the question of the value of plaintiff's services, as testified to by plaintiff, considering the knowledge plaintiff must have acquired from her position in the household as to the value of such services, which were described in detail, and her testimony as to the amount of wages paid to others performing somewhat similar services in the household, there was sufficient testimony to guide the jury in arriving at the fair value of plaintiff's services.

ASSUMPSIT. Heard on exceptions of defendant and overruled.

RATHBUN, J. This is an action in assumpsit brought against the executor of the will of Ann E. Chapman to recover for care and nursing rendered the testatrix in her lifetime. The plaintiff filed in the Municipal Court of the

City of Providence the following claim against the estate of the testatrix: "To nursing and attendance from March 1st, 1915 to March 29th 1919 Two hundred and twelve weeks at Twelve Dollars per week at $2544." Said claim was disallowed by the executor and this suit was thereafter duly commenced in the Superior Court. The trial of the case resulted in a verdict for the plaintiff for $2,155. The case is before this court on the defendant's exception to the refusal of the trial court to grant a new trial, also on certain exceptions taken during the trial including an exception to the refusal of the trial court to direct a verdict for the defendant.

The plaintiff is the wife of Albert W. Chapman, a son of the testatrix. At the time of his marriage and for many years thereafter the son was engaged in business with his father and resided with his parents. When he married the plaintiff she became a member of his parent's family and continued to be a member of the household until the death of the testatrix. The plaintiff's husband ceased to reside with his mother two or three years before her death.

The plaintiff testified that her husband paid for her board during some portion of the time that they lived with his parents but she did not know how much he paid or when he ceased to pay for her board. Until the death of the testatrix's husband in 1909 the household consisted of the testatrix, her husband, the plaintiff and her husband and two servants. On the death of the testatrix's husband the plaintiff and her husband made plans to leave the Chapman household and make a home of their own but at the request of the testatrix, who desired not to be left alone, they consented to remain. The plaintiff's husband testified that testatrix at this time told him that his wife would be paid for her services in caring for his father and that in the future she would be paid for anything she might do for testatrix.

After the death of her husband testatrix employed one servant instead of two. She was ill on two or three occasions and was nursed either by the plaintiff alone or by a

regular nurse assisted by the plaintiff. On these occasions the testatrix paid the plaintiff for her services. At one time, three or four years prior to 1915, the testatrix after recovering from an illness paid the plaintiff forty dollars saying, "I want to pay you for what you have done for me." "When I get old you will have to take care of me." "I will have to depend on you when I get old." In March, 1915, testatrix fell and fractured her hip. Thereafter she required constant attendance. From the time of the testatrix's fall in March, 1915, the date when the services sued for commenced, until her death, the plaintiff had charge and direction of the testatrix's household, ordered the food, assisted the cook with the housework, assisted the nurse in caring for the testatrix and did her sewing and mending. During the first eleven months after the testatrix's fall a trained nurse was employed and thereafter an experienced nurse was in attendance. Plaintiff assisted the nurse in lifting the testatrix whenever it was necessary to move her during the time that she was confined to her bed. Whenever for a short period it was impossible to obtain a nurse, the plaintiff and the cook cared for the testatrix. Plaintiff had the sole care of testatrix for two or three hours each day while the nurse was off duty. Regularly on Thursday and Sunday afternoons, in the absence of the servant, the plaintiff performed all the household duties. It required the services of both the plaintiff and the nurse to assist testatrix in moving about her room and in going to and from the toilet. The plaintiff read to testatrix and assisted in preparing her to retire at night. Plaintiff testified that testatrix once said, "Well, Lizzie, will have to get her pay later." Testatrix was ninety-two years of age when the services commenced and ninety-six at the time of her decease when the services terminated.

The testatrix was taxed for $62,000 upon real estate. Her income was about $3,500 a year, but after her fall her income was considerably less than her expenses. She sold some of her bonds to obtain cash to help defray her ex-

penses. A few months before her decease she borrowed $2,000 which she secured by a mortgage on her real estate, some of which was already mortgaged. Plaintiff testified that she did not think testatrix had sufficient income to pay the plaintiff during testatrix's lifetime. After the testatrix's fall she made no payment to the plaintiff for her services and the plaintiff at no time requested payment.

Defendant waives all exceptions except those numbered 1, 2, 7, 11, 12 and 13 in the bill of exceptions.

The 7th exception is to the refusal of the trial court to direct a verdict for the defendant. In *Newell* v. *Lawton*, 20 R. I. 307, this court sustained a nonsuit but said: "The evidence shows no express agreement on the part of the testatrix to pay for these benefits, nor circumstances affording ground for a reasonable expectation on the part of the plaintiff that compensation was to be made. The only testimony which can be regarded as in any way tending to do so was that the testatrix had said to the plaintiff that she had to work hard, and that she, the testatrix, could not pay her then. This testimony, standing by itself, is too slight to rebut the presumption arising in such cases that services rendered or benefits conferred by members of the same household to or upon each other are prompted by affection or good will rather than from an expectation of payment." *Brown* v. *Cummings*, 27 R. I. 369, was a suit by a stepdaughter to recover for services rendered in nursing her stepfather during his last sickness. The court said: "In the absence of any evidence the presumption arises that services rendered between members of the same family are gratuitous, but this presumption yields to evidence so that 'if the circumstances in which the services are rendered are such as to show a reasonable and proper expectation that compensation is to be made, the plaintiff will be entitled to recover.' *Fuller* v. *Mowry*, 18 R. I. p. 426." The court in *Brown* v. *Cummings*, *supra*, after suggesting that the plaintiff had not resided with the deceased before the services were rendered, said further: "if she was a member of his

family at that time, then the circumstances in which the services were rendered should have been submitted to the consideration of the jury for their determination as to whether they do or do not show a reasonable and proper expectation that compensation was to be made." See also *White* v. *Almy*, 34 R. I. 29.

(1) While the statements in the nature of promises to pay attributed to the testatrix were somewhat meagre and the evidence relative to such statements was confined to the testimony of plaintiff and her husband it did appear that necessary and arduous services were rendered; that practically all the plaintiff's time for more than four years was devoted to the testatrix whose age and physical condition prevented any reciprocal service; and that for two years, at least, the plaintiff had little of the society of her husband who boarded elsewhere. The plaintiff was not a daughter but a daughter-in-law.

We are of the opinion that the case presented a question for the jury and that the jury was justified in finding upon all the evidence that there was a reasonable and proper expectation on the part of both the plaintiff and the testatrix that the plaintiff would be compensated. The trial court did not err in denying defendant's motion to direct a verdict in its behalf. Defendant's 7th exception is overruled.

The 13th exception is to the decision of the trial court denying defendant's motion for a new trial made on the usual grounds. It was argued that the damages are excessive and that no legal evidence was submitted as to the value of plaintiff's services. It was suggested that plaintiff did not qualify as an expert before testifying as to the value of the services which she rendered. The plaintiff testified that in her opinion twelve dollars per week was a fair compensation for her services. Exactly how much knowledge she had on the subject of wages does not appear but in her position in the household she must have obtained some information as to the value of such services as she

rendered.   The services rendered were described with considerable detail.   She testified as to the amount of wages paid to other persons performing somewhat similar services in the same household.   We think there was ample testimony in the case to guide the jury in arriving at the fair value of the plaintiff's services.   As the plaintiff was entitled to interest the amount awarded was less than ten dollars per week.   It is well known that wages were abnormally high during a considerable portion of the time that the services were rendered.   The justice who presided at the trial has refused to disturb the verdict and nothing has been shown to indicate that he was clearly wrong.   Defendant's 13th exception is overruled.

Exceptions 1 and 2 were taken to the admission of certain testimony and are without merit.

Exceptions 11 and 12 are to the refusal of the court to grant requests to charge.   In so far as these requests were proper they were substantially given in granting other requests of the defendant to charge.

All of the defendant's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment upon the verdict.

*Waterman & Greenlaw*, for plaintiff.

*Huddy, Emerson & Moulton*, for defendant.